## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEAVAN BERRY and BENJAMIN
WECHSLER on behalf of themselves
and similarly situated employees,

Plaintiffs,

v.

AMERICAN INCOME LIFE
INSURANCE COMPANY.

Civil Action No:   2:20-cv-110

Complaint-Class and Collective Action

Jury Trial Demanded

ELECTRONICALLY FILED

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Deavan Berry ("Berry") and Benjamin Wechsler ("Wechsler") (collectively referred to as "Plaintiffs"), through their undersigned counsel, individually and on behalf of all person similarly situated, files this Complaint against Defendant American Income Life Insurance Company ("Defendant" or "AILIC") seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and Pennsylvania law.  The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1.  Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

3.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391.  Plaintiffs resides in this judicial district, the events giving rise to Plaintiffs' claims occurred within this district, and Defendant does business in this district.

## PARTIES

4. Plaintiff, Deavan Berry, is an individual currently residing at 5846 Burchfield, Pittsburgh, Pa 15217. He worked for AILIC located at 150 Lake Dr. #105, Wexford, PA 15090, between approximately June 2018 and December 2019, and pursuant to 29 U.S.C. § 216(b), has consented in writing to being a Plaintiff in this action. Plaintiff Berry's Consent to Join form is attached hereto as **Exhibit A.**

5. Plaintiff, Benjamin Wechlser, is an individual currently residing at 1201 Shaye Court, Hunker, PA 15639. He worked for AILIC located at 150 Lake Dr. #05, Wexford, PA 15090, between approximately May 2015 through November 2019, and pursuant to 29 U.S.C. § 216(b), has consented in writing to being a Plaintiff in this action. Plaintiff Wechsler's Consent to Join form is attached hereto as **Exhibit B.**

6. Defendant American Income Life Insurance Company ("Defendant" or "AILIC") is an Indiana corporation and operates throughout the United States, including in this judicial district.

7. AILIC is an insurance company registered with the National Association of Insurance Commissioners.

8. AILIC employed Plaintiffs and similarly situated employees.

9. AILIC employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

10. AILIC's annual gross volume of business exceeds $500,000.

11. AILIC is not an independently owned and controlled local enterprise within the meaning of 29 U.S.C. § 207(b)(3).

## CLASS DEFINITIONS

12. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. 216(b) as a collective action on behalf

of the following class of potential opt-in litigants:

*All individuals who trained to become and/or worked as sales agents/insurance
producers for American Income Life Insurance in the last three (3) years.*

13. Plaintiffs also bring this lawsuit for Counts Three through Six as a class action pursuant

to the Federal Rules of Civil Procedure 23, on behalf of themselves and the following

class:

*All individuals who trained to become and/or worked as sales agents/insurance
producers for American Income Life Insurance in the last three (3) years.*[1]

14. The FLSA Class and the Pennsylvania Class are together referred to as the "Classes".

15. Plaintiffs reserve the right to re-define the Classes prior to notice or class certification,

and thereafter, as necessary.

## FACTS

16. AILIC employs members of the Classes throughout the United States.

17. From June 2018 through December 2019, Berry was employed as an insurance producer,

selling insurance for AILIC.

18. From May 2015 through November 2019, Wechsler was employed as an insurance

producer, selling insurance for AILIC.

19. Plaintiffs worked at the location at 150 Lake Dr. #105, Wexford, PA 15090.

20. AILIC hires agents, who are paid on commission.

---

[1] The statute of limitations for Plaintiff's unjust enrichment claim is four years.  Accordingly, Count IV of the
Complaint goes back four years.

21. When agents begin work, they enter into an "Agent Contract" with AILIC. *See* **Exhibit C.**

    a. The Agent Contract states, "The Agent is not an employee of the Company; rather, the agent is an independent contractor. The agent has no fixed hours and is free to choose the time and manner in which services are performed."

    b. The Agent Contract lays out a commission schedule for the agents.

    c. The Agent Contract also states, "The agent shall be responsible for all expenses incurred in the production of insurance for the Company. The Agent shall, at his or her own expense, furnish his or her own means of transportation…and any other relevant expenses incurred solicitation of insurance for the Company."

    d. The Agent Contract includes an arbitration provision, which provides that "all disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract…, except a dispute regarding the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration…Arbitration shall be on an individual, not a class, collective, representative, or private attorney general basis. If this class-action waiver is deemed unenforceable, the entire agreement to arbitrate shall not apply."

    e. The Agent Contract also states, "Aside from issues relating to arbitration or the enforceability of this agreement to arbitrate, all issues relating to any dispute, claim, or controversy arising out of or relating to this Contract shall be governed by and decided in accordance with the internal laws of the State of Texas, without regard to its choice-of-law rules."

22. Upon hire, Defendant required Plaintiffs and similarly situated new hires to attend training.

23. New hires are informed they will make $500 a week for two weeks of mandatory training.

24. Training lasts at least several weeks and the agents work more than eight hours per day, six or more days per week, and over forty (40) hours a week while training.

25. Since agents do not make sales while training, and their compensation is commission based, they do not earn money while training.

26. Plaintiffs and similarly situated employees were not paid for their time spent in training.

27. Upon information and belief, Defendant wrongfully classified Plaintiffs and similarly situated insurance workers as independent contractors.

28. Plaintiffs and similarly situated individual's relationship with Defendants followed the normal path of an employee, not an independent contractor.

29. AILIC regulates its agents' schedules, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week as well as in-office sales meetings and calls to occur at certain times and days of the week.

30. Agents are not paid minimum wage or overtime pay.  They also do not receive regular meal and rest breaks and are not paid for missed breaks.  Agents are also required to  pay their own expenses incurred in the performance of their jobs.

31. Agents are discouraged from holding other jobs while working for AILIC.

32. Defendant controlled the products Plaintiffs and similarly situated individuals were allowed to sell.

33. Defendants trained Plaintiffs and similarly situated individuals in Defendant's standard sales policies and practices and required Plaintiffs and other workers to adhere to those policies and practices.

34. Plaintiffs and similarly situated individuals performed duties that were integral to Defendant's business.

35. Defendants did not negotiate distinct business agreements with each agent; rather, Defendant dictated standard terms for all agents.

## COLLECTIVE ACTION ALLEGATIONS

36. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class as defined above.

37. Plaintiffs' desire to pursue their FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

38. Plaintiffs and the FLSA Class are similarly situated as that term is used in 29 U.S.C. § 216(b), because, inter alia, all such individuals worked pursuant to Defendant's previously described common business practices and, as a result, were not paid their full amounts of legally mandated overtime premium for hours worked over forty during the workweek, were not paid proper minimum wage for all hours worked up to forty (40) per week, were not paid for time spent in mandatory training, did not properly compensate Plaintiffs for missed meals and rest breaks, illegally required employees to pay their own work-related expenses, and subjected employees to illegal "chargebacks" by collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

39. The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, as allowed to opt into it pursuant to 29 U.S.C. § 216(B) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages, interest, and attorney's fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

40. Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Pennsylvania Class described above.

41. The members of the Pennsylvania Class are so numerous that joinder of all members is impracticable.

42. Plaintiffs will fairly and adequately represent and protect the interests of the Pennsylvania Class because there is no conflict between the claims of Plaintiffs and those of the Pennsylvania Class, and Plaintiffs' claims are typical of the claims of the Pennsylvania Class. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases, like this one.

43. There are questions of law and fact common to the proposed Pennsylvania Class, which predominate over any questions affective on individual Class members, including whether Defendants violated and continue to violate Pennsylvania law through its policy or practice of not paying proper wages to its employees.

44. Plaintiffs' claims are typical of the claims of the Pennsylvania Class in the following ways: 1) Plaintiffs are a member of the Pennsylvania Class; 2) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of

the Pennsylvania Class; 3) Plaintiffs' claims are based on the same legal and remedial

theories as those of the Pennsylvania Class and involve similar factual circumstances.; 4)

there are no conflicts between the interests of the Plaintiffs and the Pennsylvania Class

members; and 5) the injuries suffered by Plaintiffs are similar to the injuries suffered by

the Pennsylvania Class members.

45.  Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law

and fact common to the Pennsylvania Class predominate over any questions affecting

only individual Class members.

46. Class action treatment is superior to the alternatives for the fair and efficient adjudication

of the controversy alleged herein. Such treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication or effort and expense that numerous individual

actions would entail.

47. No difficulties are likely to be encountered in the management of this class action that

would preclude its maintenance as a class action, and no superior alternative exists for the

fair and efficient adjudication of this controversy. The Pennsylvania Class is readily

identifiable from Defendants employment records. Prosecution of separate actions by

individual members of the Pennsylvania Class would create the risk of inconsistent or

varying adjudications with respect to the individual Class members that would establish

incompatible standards of conduct for Defendants

48. A class action is superior to other available methods for adjudication of this controversy

because joinder of all members is impractical. The amounts at stake for the Defendants'

employees, while significant, are not great enough to maintain separate suits against Defendants.

49. Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Pennsylvania Class. Plaintiffs envision no difficulty in the management of this case as a class action.

### COUNT I
### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME

50. All previous paragraphs are incorporated as though fully set forth herein.

51. At all times relevant to this Complaint, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*; 29 C.F.R. § 791.2.

52. At all times relevant to this Complaint, Plaintiffs were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

53. Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

54. Plaintiffs and the proposed Collective members are not exempt from the applicable provisions of the FLSA.

55. At all times relevant to this Complaint, Defendant "suffered or permitted" Plaintiffs to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

56. The FLSA requires an employer to pay all employees the federally mandated overtime premium rate of one and one-half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. 29 U.S.C. § 207.

57. Plaintiffs regularly worked over 40 hours per week while employed by Defendant.

58. Defendant violated the FLSA by failing to pay Plaintiffs overtime compensation, at the rate of one and one-half times their regular hourly rate, for all hours worked in excess of 40 per workweek.

59. Defendant violated the FLSA by failing to pay Plaintiffs proper minimum wage for all hours worked up to forty (40) per week.

60. Defendant violated the FLSA by failing to pay Plaintiffs for time spent in mandatory training.

61. Defendant violated the FLSA by failing to pay for missed meals and rest breaks.

62. Defendant violated the FLSA by requiring employees to pay their own work-related expenses.

63. Defendant violated the FLSA by subjecting employees to "chargebacks" by illegally collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

64. Defendant's violations of the FLSA were willful, with knowledge or reckless disregard of the statutory overtime requirements, as demonstrated by their failure to pay Plaintiffs an overtime premium for all hours worked in excess of 40 per week.

65. As a result of the foregoing, Plaintiffs were injured and seek appropriate relief against Defendant including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

## COUNT II

### VIOLATION OF 29 C.F.R. § 516, *et seq.*
### FAILURE TO MAINTAIN REQUIRED RECORDS

66. All previous paragraphs are incorporated as though fully set forth herein.

67. 29 C.F.R. § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

68. The FLSA requires all employers to keep all payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). See 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

69. As Plaintiffs' employer, Defendant was subject to the FLSA's record keeping requirements.

70. Defendant's obligations were to maintain and preserve payroll or other records containing, without limitations, the total hours worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R. § 516.2.

71. Upon information and belief, Defendant maintains corporate policies and/or practices of evading pay for its hourly employees by altering their time records and pay periods and failing to accurately record Plaintiffs' hours worked.

72. Defendant failed to maintain and preserve accurate timesheets and payroll records as required by 29 C.F.R. § 516.2.

73. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate…an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

58. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with…the Act." *Id.*

59. As a result of the Defendant's recordkeeping violations, Plaintiffs seek a declaratory judgment and order that the *Anderson* burden-shifting framework applies in this case, along with all other relief just and appropriate in the circumstances.

## COUNT III
### Violations of the Pennsylvania Minimum Wage Act

60. All previous paragraphs are incorporated as though fully set forth therein.

61. The Pennsylvania Minimum Wage Act of 1968 requires that covered employees be compensated at a rate not less than the standard rate.

62. The Pennsylvania Minimum Wage Act of 1968 requires that covered employees be compensated for all hours worked in excess of forty per week at a rate of at least one and one-half time the regular rate at which he or she is employed. See 43 P.S. § 333.104 (c) and 34 Pa. Code. § 231.41.

63. As described above Plaintiffs and Pennsylvania Class were subject to Defendant's practice of not paying employees for all hours worked, including overtime.

64. Plaintiffs and Pennsylvania Class were not properly compensated for hours worked at a rate equal to or above Pennsylvania's minimum wage.

65. Additionally, Plaintiffs and Pennsylvania class were not properly compensated for hours worked in excess of forty (40) hours per workweek.

66. Defendant failed to pay Plaintiffs for time spent in mandatory training.

67. Defendant failed to pay for missed meals and rest breaks.

68. Defendant illegally required employees to pay their own work-related expenses.

69. Defendant illegally subjected employees to "chargebacks", by collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

70. Plaintiffs and Pennsylvania Class were non-exempt employees.

71. In violating the PMWA, Defendant acted willfully and with reckless disregard of the applicable provisions to the detriment of Plaintiff and the Class.

## COUNT IV
### Violation of the Pennsylvania Wage Payment and Collection Law

72. All previous paragraphs are incorporated as though fully set forth therein.

73. The Pennsylvania Wage Payment and Collection Law (WPCL) requires that an employer pay all wages due to its employees. 43 P.S. § 260.3.

74. Defendant has intentionally failed to pay wages due to employees for

   a. Purposefully failing to pay employees for the true and correct number of hours they have worked; and

   b. Failing to pay employees minimum wage and all other wages due.

75. Pursuant to 43 P.S. § 260.9 and 260.10, employers, such as Defendant, who intentionally fail to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

76. Defendant does not have written authorization from Plaintiffs or Pennsylvania Class Members to withhold, divert, or deduct any portion of his or her wages that concern this action.

77. Defendant violated Pennsylvania law by failing to pay Plaintiffs and the Pennsylvania Class for all compensable time and by failing to pay plaintiff and the Pennsylvania Class for work time, including overtime, at the established rate.

78. Defendant failed to pay Plaintiffs for time spent in mandatory training.

79. Defendant failed to pay for missed meals and rest breaks.

80. Defendant illegally required employees to pay their own work-related expenses.

81. Defendant illegally subjected employees to "chargebacks", by collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

### COUNT V
**Unjust Enrichment**

82. All previous paragraphs are incorporated as though fully set forth herein.

83. Defendant has received and benefitted from the uncompensated labors of Plaintiffs and Pennsylvania Class, such that to retain such benefit without compensation would be inequitable and unjustly enrich the Defendant.

84. At all times relevant hereto, Defendant, devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from plaintiffs and Pennsylvania Class without paying total compensation and overtime for hours worked.

85. Contrary to good faith and fair dealing, Defendant induced Plaintiffs and the Classes to perform work while failing to pay overtime and/or minimum wage compensation for all hours worked as required by law.

86. By reason of having secured the work and efforts of Plaintiffs and the Pennsylvania Class without paying overtime and full compensation as required by law, Defendant enjoyed reduced labor costs and consequentially additional earnings and profit to its own benefit.

87. Therefore, Plaintiffs and Pennsylvania Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendant.

## COUNT VI
### Declaratory Relief in the form of Recession of the "Agent Contract"

88. All previous paragraphs are incorporated as if fully set forth herein.

89. Prior to agents working for Defendant, they are required to sign an "Agent Contract." *See* **Exhibit C.**

90. The agreement specifically states that, "the Agent has no fixed hours and is free to choose the time and manner in which services are performed." *See* **Exhibit C.**

91. The representation of being able to make their own hours and be free to choose the time and manner in which their services were performed was a material element of the agreement.

74. This statement was made falsely by Defendant, who had knowledge of its falsity, as AILIC regulates its agents' schedules, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week as well as in-office sales meetings and calls to occur at certain times and days of the week.

75. Defendant intended to mislead the Plaintiffs in order to have them enter into the agent contract.

76. Defendant intentionally defrauded employees regarding their work hours, schedules, and amount of pay to entice employees to work for less money than they were entitled to.

77. The Plaintiffs justifiable relied on this misrepresentation when signing the agent contract.

78. The resulting injury is directly connected to Plaintiff's being mischaracterized as independent contractors, rather than employees, specifically in relation to being forced to

work certain schedules, attend meetings at certain times and places, and being required to account for their time to Defendant.

79. An actual dispute and controversy has arisen between Plaintiffs and Defendant regarding whether or not the agent contract and the provisions set forth therein are enforceable.

80. For the reasons set forth above Plaintiffs seek a declaratory judgement rescinding the "agent contract" as it was induced by fraud.

81. A judicial determination is necessary and appropriate at this time to determine the respective rights of Plaintiffs and Defendant.

82. Plaintiffs request a declaration from this Court that the agent agreement made between Plaintiffs and Defendant is rescinded.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs Deavan Berry and Benjamin Wechsler on behalf of themselves and all others similarly situated, requests an order for relief as follows:

A. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. An order compelling Defendant to provide a full list of all current and former employees for the last three (3) years.

C. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential Class members;

D. An order permitting this litigation to proceed as a class action pursuant to Federal Rules of Civil Procedure 23 on behalf of the Pennsylvania Class;

E. An order rescinding the "agent contract" for all Plaintiffs;

F.  Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

G.  Liquidated damages to the fullest extent permitted under the law;

H.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law;

I.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs Deavan Berry and Benjamin Wechsler individually and on behalf of all others similarly situated, by and through their attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled case.

Date:   January 23, 2020

Respectfully Submitted,

*/s/ Kenneth J Hardin II*
Kenneth J. Hardin II, Esq.
**HARDIN THOMPSON, P.C.**
The Frick Building
437 Grant Street
Suite 620
Pittsburgh, PA 15219
412-315-7195
kenhardin@hardinlawpc.net